UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISTRICT COUNCIL 16 NORTHERN CALIFORNIA HEALTH AND WELFARE TRUST FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MASTERPIECE PAINTING, INC., et al.,<br><br>Defendants. | Case No. 22-cv-06540-HSG   (LJC)<br><br>**ORDER TO SHOW CAUSE WHY MOTION FOR DEFAULT JUDGMENT SHOULD NOT BE DENIED IN PART**<br><br>Re: Dkt. No. 16 |

## I. INTRODUCTION

The Court has referred Plaintiffs' pending Motion for Default Judgment (ECF No. 16) to the undersigned magistrate judge for a report and recommendation. The undersigned has identified potential deficiencies in service of process and in Plaintiffs' showing of damages, including attorneys' fees and costs. For the reasons discussed below, Plaintiffs are ORDERED TO SHOW CAUSE why the Motion should not be denied in part, by filing a supplemental brief and accompanying evidence no later than March 4, 2024. After Plaintiffs file their response, the undersigned will issue a report and recommendation regarding the disposition of Plaintiffs' Motion.

## II. BACKGROUND

Plaintiffs are several union benefit trust funds and their trustees. Defendants Masterpiece Painting, Inc. and Terrance Johnson entered contracts with Plaintiffs in which Masterpiece Painting agreed to pay benefits contribution to Plaintiffs in accordance with a collective bargaining agreement, and Johnson agreed to personally guarantee those payments. Plaintiffs bring this action under the Employee Retirement Income Security Act of 1974 (ERISA) alleging that Defendants failed to pay certain contributions due, failed to file contribution reports for many

1 months, and failed to cooperate with an audit.  Defendants did not appear or answer Plaintiffs'

2 Complaint, the Clerk entered Defendants' default on January 18, 2023 (ECF No. 14), and

3 Plaintiffs now move for default judgment seeking monetary damages totaling $31,613.27

4 (including attorneys' fees and costs) and injunctive relief requiring Defendants to produce certain

5 documents necessary to Plaintiffs' audit.

### III. ANALYSIS

#### A. Legal Standard

Motions for default judgment generally fall within the discretion of the district court, as guided by the factors that the Ninth Circuit identified in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  The undersigned will address those factors and other relevant considerations in a report and recommendation following Plaintiffs' response.  This Order to Show Cause turns on two relatively discrete issues.

First, as a threshold matter, the Court must determine that service of process was proper. *Bank of the W. v. RMA Lumber Inc.*, No. C 07-06469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008).  Service must comply with Rule 4 of the Federal Rules of Civil Procedure, which authorizes service either through several means specifically listed or in any manner allowed by state law.  It is not clear that Plaintiffs properly served Defendant Masterpiece Painting.

Second, although the allegations of a plaintiff's complaint are taken as true for most purposes on a motion for default judgment, damages must be supported by evidence.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917−18 (9th Cir. 1987).  The evidence that Plaintiffs have offered for several categories of damages that they seek appears to be insufficient, or in some instances appears to undermine Plaintiffs' position.

#### B. Service of Process

Plaintiffs filed proofs of service indicating that they completed substitute service on Defendants by leaving documents with Jean Kim, the manager at 3542 Fruitvale Avenue #120, Oakland, CA 94602, with boxes checked to indicate that is the "office or usual place of business of the person served."  ECF No. 8 at 1, 4.  That address is listed for Johnson, as Masterpiece Painting's agent of service of process, on the California Secretary of State's website.  ECF No. 12

1  at 2 (Request for Entry of Default and Mendoza Decl. ¶ 2).

2  If that were the only information available, it would tend to indicate that Masterpiece Painting was properly served under section 415.20(a) of the California Code of Civil Procedure, which allows service by "by leaving a copy of the summons and complaint during usual office hours in [the] office" of a person to be served under section 416.10, which includes "the person designated as agent for service of process" of a corporation, and subsequent mailing to the same address. Cal. Civ. Proc. Code §§ 415.20(a), 416.10(a); *see also* Fed. R. Civ. P. 4(e)(1), (h)(1) (allowing service on corporate entities by methods authorized by state law). Plaintiffs' request for entry of default, however, indicates that the Fruitvale Avenue address was a "P.O. Box." ECF No. 12 at 1–2, ¶ 2. Section 415.20(a) allows for service at a person's "usual mailing address" only if "no physical address is known." Cal. Civ. Proc. Code § 415.20(a). The record does not indicate whether Plaintiffs are aware of any physical office address for Johnson or for any other appropriate officer of Masterpiece Painting. Defendants are therefore ORDERED TO SHOW CAUSE where their Motion should not be denied as to Masterpiece Painting for improper service, by filing either a declaration indicating that Plaintiffs are not aware of another physical address for service on Masterpiece Painting or a response otherwise showing that showing that service on Masterpiece Painting was proper.

As for service on Johnson in his individual capacity, section 415.20(b) of the Code of Civil Procedure (governing service on an individual through its reference to section 416.90) allows for leaving documents at a usual mailing address (and subsequent mailing) "[i]f a copy of summons and complaint cannot with reasonable diligence be personally delivered to the person to be served." Cal. Civ. Proc. Code § 415.20(b); *see also* Fed. R. Civ. P. 4(e)(1) (allowing service on individuals by methods authorized by state law). Plaintiffs' proof of service indicates that a process server attempted three times to serve Johnson personally at an address that Plaintiffs identified as his residence through a public records search, ultimately leaving documents with an unidentified woman who was present at that house. ECF No. 8 at 9. That is likely sufficient to show reasonable diligence such that Plaintiffs could serve Johnson at his mailing address as stated on the Secretary of State's website. *See Kremerman v. White*, 71 Cal. App. 5th 358, 373 (2021)

1  ("Ordinarily, two or three attempts at personal service at a proper place and with correct pleadings
2  should fully satisfy the requirement of reasonable diligence and allow substituted service to be
3  made."). In an abundance of caution, however, Plaintiffs are ORDERED to file a declaration
4  indicating whether they are aware of any other address where Johnson could be served.[1]

### C. Estimated Contributions

Pursuant to the Collections Procedures adopted by Plaintiffs' trustees, "[u]nreported contributions, where the Employer fails or refuses to submit missing contribution reports, shall be estimated based on the last report submitted, on the average of the last 3 months reported, or on the average of the last 3 months, whichever is greater." ECF No. 19-1 at 18 (Collection Procedures § III(G)).

Defendants failed to submit contribution reports for December 2020, June 2021, July 2021, and March 2022 through February 2023. ECF No. 18 at 6 (Christophersen Decl. ¶ 18). Plaintiffs estimate contributions for all of those months at the rate of $909.02 month, reflecting the average of Defendants' reported contributions for September 2020 ($1,671.79), November 2020 ($355.70), and May 2021 ($699.58[2]), the most recent three months for which Defendants reported owing any contributions. ECF No. 18 at 6 (Christophersen Decl. ¶ 19). Because Plaintiffs use a subsequent report (May 2021) to estimate a prior delinquency (December 2020), their approach implies a literal meaning of the word "last" in the Collection Procedures, looking to the final month(s) or report(s) before collection efforts rather than the previous month(s) or report(s) before a given month for which an estimate is needed.

---

[1] Because Plaintiffs appear to have properly served Johnson at his mailing address, the Court need not decide whether Plaintiffs properly served him by leaving documents with a "competent member of the household" at his house, as also allowed by section 415.20, or with "someone of suitable age and discretion who resides there," as allowed by Rule 4(e)(2)(B). It is not clear if or how Plaintiffs' process server determined that the unidentified woman at Johnson's house was a "member of [Johnson's] household" or that she "reside[d] there."

[2] Defendants actually reported $4,054.98 in contributions for May 2021, but Plaintiffs were only able to process $699.58 of that amount because Defendants provided incomplete social security numbers for certain employees. ECF No. 18 at 6 (Christophersen Decl. ¶ 19 n.2). It is not clear that Defendants could not use the actually reported figure in estimating amounts owed for other months, but because they have expressly declined to do so and that decision would tend to benefit Plaintiffs, the undersigned finds no reason to consider whether Defendants could have used the higher figure for that month.

According to Plaintiffs' third-party administrator Coleen Christophersen, however, "Defendants submitted '0 hours' reports for the months of October 2020, January 2021 through April 2021, and August 2021 through February 2022." ECF No. 18 at 6 (Christophersen Decl. ¶ 18 n.1). Nothing in the Collection Procedures indicates that zero-hour reports should be disregarded in estimating contributions owed for months where an employer failed to submit a report. If those reports are considered, and if the Court follows Plaintiffs' approach of looking to the *final* reports before collection rather than the *previous* reports before any given month, then any of the three estimation methods allowed by the Collection Procedures results in an estimate of no money owed: "the last report submitted" was a zero-hour report in February 2022; "the last 3 months reported" were all zero-hour reports in December 2021, January 2022, and February 2022; and there is no indication that Defendants owed contributions for any month after February 2022 that could be used to calculate an average of "the last 3 months." *See* ECF No. 19-1 at 18 (Collection Procedures § III(G)).

The undersigned is aware of one other case addressing this issue, where Judge Spero relied on a supplemental declaration by Plaintiffs' chairman Robert Williams stating that the trustees who adopted the Collection Procedures "intended that the portion of the Estimated Contributions policy that reads '...on the average of the last 3 months reported...' be interpreted as authorizing the Plaintiff Trust Funds' Legal Counsel to estimate contributions based on the average of the last 3 months in which the employer reported more than zero hours in each of those three months."[3] *Dist. Council 16 N. California Health & Welfare Tr. Fund v. Arellano*, No. 22-cv-02226-JCS, 2023 WL 8681275, at *7 (N.D. Cal. Nov. 2, 2023) (Report and Recommendation[4]). Plaintiffs have not filed a similar declaration here or argued that this is the correct interpretation of the text.

---

[3] Williams's declaration in *Arellano* also states that "the Trustees intended that the timeframe that the Plaintiff Trust Funds use to estimate an employer's contributions under the Estimated Contributions policy be the employer's history of reporting contributions immediately before the unreported month(s)," not the last months before enforcement. *Arellano*, 2023 WL 8681275, at *7. That is not consistent with the method Plaintiffs used calculate estimated contributions in this case, as discussed above.

[4] As of the date of this Order to Show Cause, the district judge to whom *Arellano* was reassigned has not ruled on the report and recommendation.

5

If Plaintiffs seek to rely on evidence of the intent behind their Collection Procedures, they must argue and file evidence in this case to support that intent.

Finally, the version of the Collection Procedures that Plaintiffs have filed in the record redacts several paragraphs, including within the sections on which Plaintiffs rely. (ECF No. 19-1 at 15–18.) It is not clear if the redacted paragraphs support, undermine, or have no bearing on Plaintiffs position. Plaintiffs must file an unredacted version of the Collection Procedures. Plaintiffs may file an administrative motion to file that document under seal if they believe there are compelling reasons to prevent public disclosure of the currently redacted paragraphs.

Plaintiffs are ORDERED TO SHOW CAUSE why their Motion for Default Judgment should not be denied as to contributions purportedly owed for December 2020, June 2021, July 2021, and March 2022 through February 2023, as well interest and liquidated damages assessed on such contributions. Plaintiffs shall file a short supplemental brief and supplemental evidence as needed to address this issue.

### D.     May 2021 Contributions

Defendants failed to submit payment for $699.58 in contributions they acknowledged owing in their May 2021 contribution report. ECF No. 18 at 7 (Christophersen Decl. ¶ 21); ECF No. 18-1 at 49. The May 2021 contribution report in fact reported $4,054.98 owed, but Plaintiffs have subtracted $3,379.15 in contributions that Plaintiffs were not able to process because Defendants failed to provide full social security numbers for two employees. ECF No. 18 at 6 (Christophersen Decl. ¶ 19 n.2). Plaintiffs have then *added* $23.75 to the $675.83 listed as contributions owed for the one employee properly identified, on the basis that Defendants used the wrong rate for that employee. *Id.*

Plaintiffs offer no evidence to show that the higher rate applied to that employee, nor evidence or explanation of how that rate was calculated. Particularly given Plaintiffs' apparent acknowledgment that Defendants were correct to apply the lower rate to the same employee in prior months, evidentiary support for the change is needed. *See* ECF No. 18-1 at 47–48 (contribution reports listing lower rate); ECF No. 18 at 6 (Christophersen Decl. ¶ 19, relying on those contributions as reported).

1   Plaintiffs are therefore ORDERED TO SHOW CAUSE why damages based on the May 2021 contribution report should not be reduced from $913.48 (Plaintiffs' figure including interest and liquidated damages) to $887.56 (consisting of $675.83 of principal, $61.73 of interest reflecting a decrease proportional to the principal, and $150 of liquidated damages).  Alternatively, if Plaintiffs do not wish to expend resources to justify a total difference of $25.92, and perhaps some small difference in other months that rely on this report to calculate an estimate, they may include notice to that effect in their response to this order, and the undersigned will assess damages based on the lower contribution rate stated in the report.

### E. Interest and Liquidated Damages for Late Contributions

Christophersen asserts that Defendants owe liquidated damages and interest for "prior late-paid contributions for the months of May 2020, July 2020, and September 2020."  ECF No. 18 at 7 (Christophersen Decl. ¶ 22).  A summary chart included in her declaration lists liquidated damages for those months in the amount of $1,834.36 and interest in the amount of $20.11.  *Id.* (Christophersen Decl. ¶ 23).  Plaintiffs have offered no evidence or explanation of the amount of Defendants' contributions in May and July of 2020, when Defendants paid contributions for any of the three months at issue, or how Plaintiffs calculated interest and liquidated damages for those months.  Plaintiffs are therefore ORDERED TO SHOW CAUSE why their Motion should not be denied as to interest and liquidated damages on late-paid contributions for May, July, and September of 2020.

### F. Attorneys' Fees and Costs

Plaintiffs seek attorneys' fees totaling $10,699.50.  ECF No. 16 at 30.  As Plaintiffs acknowledge, courts considering fee requests under ERISA "'must determine a "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.'"  *Id.* (quoting *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Accident Ins. Co.*, 25 F.3d 743, 750 (9th Cir. 1994)).

Starting from the second component of that formulation, although Plaintiffs assert that their billing rates "are significantly lower than those charged in the area," they cite no evidence or authority for that proposition.  ECF No. 16 at 31 (emphasis in original).  Their Motion therefore

7

1  fails to show that their proposed lodestar is based on a "reasonably hourly rate." *See Credit*
2  *Managers*, 25 F.3d at 750.  Plaintiffs are ORDERED TO SHOW CAUSE why their Motion
3  should not be denied as to attorneys' fees on that basis.[5]

4  Plaintiffs further request costs totaling $1,488.21 for "the Complaint filing fee, service of
5  the Summons and Complaint on Defendants, and Legal Research."  ECF No. 16 at 23.  Those
6  categories of costs are reasonable and recoverable under ERISA and the parties' agreements.  *See*
7  29 U.S.C. § 1132(g)(2)(D); ECF No. 18-1 at 25 (Bargaining Agreement art. 17 § 4(c)), allowing
8  recovery of "any other expenses incurred in connection with the delinquency).

9  Plaintiffs' itemized statement of costs, however, includes two separate $402 charges for
10 "Complaint filing fee": one on October 26, 2022, when this case was filed, and one on January 30,
11 2022, several months earlier.  ECF No. 19-1 at 30–31.  A legal research entry for $70.16 and two
12 service of process entries totaling $243.26 similarly predate the filing of this case by several
13 months.  *Id.*  Those earlier filings appear to correspond to a previous case that Plaintiffs filed
14 against the same Defendants on January 30, 2022 and voluntarily dismissed without prejudice on
15 April 11, 2022, after Defendants' default was entered and the Court directed Plaintiffs to file a
16 status report.  *See generally District Council 16 N. Cal. Health & Welfare Tr. Fund v. Masterpiece*
17 *Painting, Inc.*, No. 4:22-cv-00642-HSG (N.D. Cal.).  Plaintiffs do not acknowledge that earlier
18 case in their Motion,[6] and have not explained why costs associated with that case (or, viewed
19 differently, costs for filing this subsequent case and re-serving the same defendants) were
20 reasonably incurred.  Plaintiffs are therefore ORDERED TO SHOW CAUSE why costs should
21 not be denied.

22 Plaintiffs' counsel's billing records also include entries that appear to be related to that

---

[5] The Court also notes that if the evidentiary support and arguments for the estimated contributions is not forthcoming or persuasive, and monetary damages are significantly reduced, fees may be reduced considering the degree of success achieved.  *Credit Managers*, 25 F.3d at 750 & n.5 (holding that even where hours are "reasonably expended," fees may be reduced based on factors including "'the amount involved and the results obtained'" (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).
[6] Plaintiffs neither noted the earlier case as related in section VIII of their civil cover sheet (ECF No. 1-1) nor filed an administrative motion to consider whether cases are related pursuant to Civil Local Rule 3-12(b).  Both cases were nevertheless coincidentally assigned to the same district judge.

earlier case. *E.g.*, ECF No 19-1 at 22–25. The billing records further include entries related to receipt of payment from a non-party general contractor on a project that involved Masterpiece Painting and negotiations of a general release with the general contractor. *Id.* at 22–23. In addition to the failure to substantiate reasonable billing rates addressed above, Plaintiffs are ORDERED TO SHOW CAUSE why fees incurred for the previously dismissed litigation, and for negotiations with a non-party general contractor, should not be denied.

## IV. CONCLUSION

For the reasons discussed above, Plaintiffs are ORDERED TO SHOW CAUSE why their Motion for Default Judgment should not be denied as to Masterpiece Painting for defective service. Plaintiffs are further ORDERED TO SHOW CAUSE why, if their Motion for Default Judgment is granted, their monetary damages should not be reduced to a total of $887.56, consisting of $675.82 in unpaid contributions, $61.73 in interest, $150 in liquidated damages. Plaintiffs shall file their response to this order no later than March 4, 2024.

**IT IS SO ORDERED.**

Dated: February 22, 2024

LISA J. CISNEROS
United States Magistrate Judge